# DECISIONS IN CASES NOT REPORTED.

## FIFTH DEPARTMENT, OCTOBER TERM, 1895.

The Canandaigua Water Works Company, Appellant, v. The Village of Canandaigua and Others, Constituting the Board of Water Commissioners of the Village of Canandaigua, Respondents.— Order affirmed, with ten dollars costs and disbursements.

William McLaughlin, Appellant, v. William E. Witherspoon, Respondent.— Judgment and order affirmed.

The Binghamton Trust Company, Appellant, v. Abijah Weston and Others, Respondents. — Judgment affirmed.

Arthur M. Dodge and Others, Appellants, v. Jessie McKechnie, as Survivor, etc., Respondent, Impleaded, etc.— Judgment affirmed, with costs.

Sarah Strong Jones, Respondent, v. The New York Central and Hudson River Railroad Company, Appellant.— Judgment and order affirmed.

William E. Case, Appellant, v. The County of Cayuga and the Board of Supervisors thereof, Respondents.— Judgment affirmed, with costs.

James H. Fisher, Respondent, v. Mary E. Filon and Others, Executors, etc., Appellants.— Judgment affirmed, with costs.—

BRADLEY, J.: The testator died in July, 1893. The claim was exhibited to the defendants in December, 1893, and referred in November, 1894. The plaintiff was an attorney and counselor at law. The referee found as facts that in or about 1888 Michael Filon, the testator, retained and employed the plaintiff to invest for him about $20,000 in western mortgages, and promised to pay the plaintiff a reasonable compensation therefor; that the plaintiff did so invest $19,400, and afterwards, from 1888 to the time of the death of the testator, at his request took charge of the collection of the interest on the mortgages, attended to the payment of the taxes and the redemption of the mortgaged lands from tax sales, rendered services and gave advice as attorney and counsel in matters relating to the investments, and conducted voluminous correspondence required in and about the business relating to them, and that his services were reasonably worth $970. The plaintiff presented no claim for any of the services in question to Mr. Filon during his life, and no account of the services was produced, nor was evidence of the value of them in detail given at the trial. It is, therefore, urged that the measure of proof requisite to establish the claim was not furnished by the evidence. It is true that a claim presented against the estate of a deceased person is properly the subject of critical inquiry, and recovery should not be allowed unless it is supported by very satisfactory evidence. (Kearney v. McKeon, 85 N. Y. 136.) There is evidence to the effect that the testator employed the plaintiff to make the investments for him and tending to prove that he intended to pay him for the services; that the plaintiff made the investments and attended to the business which followed relating to them. This included the collection of interest and payment of taxes so far as it became necessary for the protection of the mortgage liens upon the property. He gave some attention to foreclosure of mortgages and conducted quite an extensive correspondence in and about the business. The only evidence of the value of the services was that given in bulk by the plaintiff. This evidence did not embrace within its import any personal transactions with the decedent. The exception to its reception was not well taken. The statement of claim as exhibited to the defendants is in terms quite general. It did not very definitely advise them of the nature of the legal services otherwise than that they related to the matters of the investments. All the services which the evidence tended to prove were performed had that relation. They, therefore, came within the import of the statement of claim. It does not appear that the defendants required the exhibition to them of a more specific statement of the plaintiff's claim. There was no error in the denial of the motions made at the close of the evidence to strike out that given in relation to the services of the plaintiff. The fact which the defendants sought to prove, that the plaintiff received payment by way of commission from the western companies, through which some of the investments for Filon were made, would, if established, present a serious objection to his claim for services in making the investments. But the evidence, as the referee held, failed satisfactorily to show that the plaintiff had any relation in the business to those companies inconsistent with his relation to Mr. Filon in the performance for him of such services. The contention that the recovery was partially barred by the Statute of Limitations is answered by the statute, which excludes eighteen months from the time within which an action may be commenced against the personal representatives of a deceased person against whom a cause of action exists at the time of his death. (Code Civ. Proc. § 403.) The evidence relating to the matter of the plaintiff's claim for services and to the value of them presented questions of fact within the province of the referee to determine, and his conclusion is fairly supported by the evidence. There was no error in the rulings at the trial. The judgment should be affirmed. Lewis and Ward, JJ., concurred.

Samuel Zurich, Respondent, v. Thomas Mills and Another, Appellants. — Judgment of County Court affirmed.

The Market and Fulton National Bank of New York and Another, Appellants, v. Thomas Jones and Others, Respondents.—Judgment affirmed, with costs.

Ferdinand A. Trippansee, Respondent, v. The New York Central and Hudson River Railroad Company, Appellant.— Judgment and order affirmed.

Francis J. Hamilton, as General Assignee, etc., Respondent, v. George A. Lee and Another, Appellants.— Order affirmed, with ten dollars costs and disbursements.

Alfred B. Osgoodby, Respondent, v. Edward P. Mills, Appellant.— Order affirmed, without costs.

Christopher Smith and Mary Jane Smith, Appellants, v. The City of Buffalo, Respondent.— Judgment affirmed, without costs. Ward, J., not sitting. No opinion.

Elizabeth Carman as Executrix, etc., Appellant, v. The Lehigh Valley Railroad Company, Respondent.— Order affirmed.

Millicent U. Wiss, Respondent, v. Buffalo,

Rochester and Pittsburg Railway Company, Appellant.—Judgment and order affirmed.

Edward P. Mills and Another, Respondent, v. Huntington R. Kenyon, Appellant, Impleaded, etc.—Interlocutory judgment affirmed, without costs. Ward, J., not sitting.

Samuel P. Guernsey, Appellant, v. Mary N. Guernsey, Respondent.—Judgment affirmed, with costs.

Lawrence Roth, Respondent, v. The City of Rochester, Appellant.—Judgment reversed and new trial granted, costs to abide the event.—

BRADLEY, J.: The action is trespass for alleged entry upon and appropriation of the plaintiff's land. The plaintiff having purchased in 1872 of Samuel Moulson took from him, in March 1874, a deed of the east part of lot 37 and the whole of lot 38 in what was known as Moulson's subdivision of the Kedie farm, then in the town of Irondequoit, Monroe county, according to a map recorded in the office of the clerk of that county, and bounded north by the center of Linden street and east by the center of Joiner street. The survey and map were made by Horace Jones, surveyor, in 1871, and he in the survey and upon the map located and described Norton street as the northern boundary of the subdivision, and parallel with and south of it Linden street, and south of that and parallel with it Borchard street, also Joiner street at right angles with them. The western boundary of the subdivision was Clinton street. After the extension of the limits of the city of Rochester so as to embrace this tract, and in 1885, the city authorities proceeded to open and grade Linden street. The complaint is, that in doing so there was an encroachment upon plaintiff's premises, and an appropriation of a strip of his land thirteen and two-tenths feet in width at the east side, reduced to the width of eleven and two-tenths feet at the west side of it, by putting it into Linden street as opened and graded by the defendant. The fact is undisputed that between the southern boundary of the plaintiff's land and Linden street as opened and graded by the city, there is that deficiency in the land described in his deed, that is to say, his east and west lines are thus made to appear that much shorter than those described in Moulson's deed to him. The only controverted question has relation to the location of Linden street as actually made by the owner of the premises and represented by the Jones survey and map. He laid it out and dedicated it as such at the width of three rods. And the plaintiff gave evidence tending to prove that the center line of it was indicated by stakes, and that if its location as thus represented had been observed by the defendant in opening and grading the street, its southern boundary would have been further north, and he would have been left in the undisputed possession of the strip of the northern portion of his premises so alleged to have been appropriated. And such in effect are the views of Jones, the surveyor, as expressed by his evidence. Upon that state of facts treated as established, the plaintiff was entitled to recover. As represented by the map before mentioned, Norton street, Linden street and Borchard street are parallel, and the lots in each tier of lots between those streets are of uniform length north and south. And the fact is undisputed that Linden street as opened is at the distance south from Norton street described on the map as its location by the surveyor. But that is not a controlling fact if it is not the place where the street was actually located by the survey, unless it also appears that it is also the distance from the south boundary of the subdivision tract as represented by the map. There is no question about the location of the west end of Linden street at its junction with Clinton street. The difficulty arises as it proceeds east to Joiner street. There the distance is not sufficient between the south line of the subdivision tract and Linden street as laid out and graded by the defendant to give the quantity of land or length of line north and south as described by the survey as represented by the map, and this deficiency is that complained of by the plaintiff. The difference in length between the west line of the tract and on Joiner street may be explained by the fact that in a map of a survey of the Kedie farm made in 1851, in which the lots were so described as to give them the greater length east and west, the lot there numbered 36, which was south of the street afterwards laid out and since known as Borchard street before mentioned, was so described that its east line was twenty links, or thirteen and two-tenths feet shorter than its west line. While Jones, when he made his survey in 1871, had knowledge of this map of 1851, the difference in the length of the west line of the subdivided tract on Clinton street and that on Joiner street was not observed in making his map. Hence arose the discrepancy between the actual length of the line and the length as represented by his map of that tract along the latter street. His evidence is to the effect that he commenced his survey at the south side of the tract subdivided, and described Linden street as parallel with the south line of it. If that is so, and the center line of Linden street was located at the east end of Joiner street the same distance from the south boundary as it was on the west end at Clinton street, the plaintiff's contention is sustained. This corresponds with the evidence of the witnesses about the location of stakes, to which they refer as before mentioned. And such view, if supported, would place the discrepancy and deficiency in that portion of the tract north of Linden street. The witness Jones, the surveyor, by his evidence, so treats it. The motions for nonsuit and for direction of a verdict for the defendant were properly denied. But the defendant's exception to the refusal of the learned court to submit to the jury the question relating to the actual location of Linden street seems to have been well taken. The difficulty very likely has arisen from the mistake in Jones' map. And as it does not appear that he made an actual survey of that part of the tract lying between Norton and Linden streets, the mistake may have been the result of his omission to do so. Nor does it necessarily appear that any stakes were on the ground indicating the actual location of Linden street at the time it was laid out by the defendant. It appears by the evidence of the city surveyor that he had before him the Jones map; that he commenced at and proceeded from Norton street to ascertain the location of Linden street. He determined it as described on his map, and as laid out and graded by taking as his guide the distance between those streets as given by the Jones map. In that respect the result of his survey does correspond with the description on that map. But the evidence tends to prove that if he had commenced at the southern boundary and proceeded north according to the description in the Jones map, the city surveyor would, by the adoption of the distances there given, have reached the southern line of Linden street, where the plaintiff claims it was located by the survey of 1871. Although the witnesses who testified to the location of the stakes referred to by them had no personal knowledge that